The STATE of Ohio, Appellee,

v.

LAWSON, Appellant.

[Cite as *State v. Lawson,* 180 Ohio App.3d 516, 2009-Ohio-62.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22557.

Decided Jan. 9, 2009.

518

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Carley J. Ingram, Assistant Prosecuting Attorney, for appellee.

Ben Swift, for appellant.

———————

WOLFF, Judge.

{¶ 1} Laramie D. Lawson pleaded no contest to possession of cocaine, a third-degree felony, after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The trial court sentenced him to two years in prison and ordered him to pay court costs. Lawson appeals from the denial of his motion to suppress. For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

I

{¶ 2} The state's evidence at the suppression hearing established the following facts.

{¶ 3} At approximately 8:15 p.m. on March 10, 2007, Dayton Police Officer Jeff Hieber was monitoring the four-way intersection at Delaware and Wheatley Avenues, where motorists frequently fail to stop at a stop sign. Hieber observed a 1986 Pontiac Grand Parisian run the stop sign as it traveled east on Delaware Avenue. Hieber left his parked position on Wheatley Avenue and attempted to catch up with the vehicle in order to initiate a traffic stop. Hieber saw the Grand Parisian fail to completely stop at the next intersection, and he successfully stopped the vehicle shortly before the intersection of Delaware Avenue and Main Street.

{¶ 4} Three individuals were located inside the Grand Parisian. In addition to the driver, Lawson was seated in the front passenger seat, and a third individual was seated behind Lawson. Hieber noticed Lawson's head repeatedly "bob" and "dip down" as though he was leaning forward. The other two individuals were still.

{¶ 5} Hieber approached the vehicle from the passenger side and talked to the driver about the basis for the stop. During this conversation, the driver admitted that he had a suspended license. As he stood next to Lawson, he observed Lawson continually fidgeting and moving his hands. Hieber asked each of the occupants for identification. Hieber believed that he might be in danger based on Lawson's movements and the facts that it was dark outside, he was located in a "high crime area," he was alone, and there were three people in the car.

{¶ 6} At this time, two other officers arrived in their cruiser, and Hieber asked the officers to get the driver out of the vehicle and run his identification. Hieber asked Lawson to step out of the vehicle, and Hieber told Lawson that he was going to have him sit in the back of his cruiser. Hieber testified that he was placing Lawson in his cruiser so he could "just keep an eye on him" while he wrote the ticket for the driver for driving under suspension.

{¶ 7} Hieber frisked Lawson prior to placing him in his cruiser. When he patted down the back-pocket area of the left side of Lawson's pants, Hieber felt a "very large lump," apparently between Lawson's pants and undergarments. Hieber squeezed it and initially believed it might have been a golf ball. He then manipulated it to try to determine what it was. When Hieber asked Lawson what the object was, Lawson merely responded, "what, what."

{¶ 8} Hieber called the other officers over. After they felt and squeezed the lump, they also asked Lawson what it was. Lawson responded as though he was not aware of the object. The officers then told Lawson that "if he had something on him, if he had any type of controlled substance on him, now would be the time to go ahead and come forward and admit to it." They then asked Lawson whether he had any controlled substance on him. One officer gave Lawson *Miranda* warnings, and the officer asked Lawson again whether he had any controlled substance in his pants. Lawson admitted that he did. Hieber asked Lawson whether it was bigger than three and a half grams. Lawson responded affirmatively.

{¶ 9} The other officers then told Lawson to remove the contraband. Lawson testified that he was handcuffed and could not remove the lump with his hands. Lawson therefore shook his left leg until the object fell out of his pants leg. The officers recovered a very large bag of powdered cocaine. Lawson was placed under arrest, and he was subsequently indicted for possession of cocaine in an amount equal to or more than 25 grams but less than 100 grams.

{¶ 10} On July 3, 2007, Lawson moved to suppress all evidence obtained as a result of the traffic stop. After the suppression hearing, the trial court orally overruled the motion. The court found that the driver of the Grand Parisian had failed to stop at a traffic-control device, justifying a stop of the vehicle. Based on Lawson's head-bobbing and fidgeting and the location of the stop, the court further found that Officer Hieber was justified in asking the driver and the passengers to exit the vehicle "in order that the officer may perform a limited weapons search for his own safety as well as that of others who may be present." The court concluded that the resulting search of Lawson and the seizure of the drugs were lawful, reasoning:

{¶ 11} "At that point, the officer did conduct a limited search of the outer clothing. When he does, he immediately finds or feels the softball size rock—the

lump as it's called. I think that's further evidence to suggest now removing—for suggesting that criminal activity is involved.

{¶ 12} "And then, at that point, then he can engage in further investigation. He does by questioning. Questioning develops even more probable cause because eventually when—apparently it didn't take too many questions, the Defendant admitted that he had cocaine and the rest is—leads to the shaking of the leg, the ball, baggie, lump falls to the ground and tested for cocaine and so forth and the arrest and everything subsequent to that would be legitimate search although pursuant to an arrest which the law recognizes.

{¶ 13} "I think maybe the plain view doctrine comes into play here and that is the Ohio Supreme Court has found that immediately apparent requirement of the plain view doctrine which comes from the *Horton* case. It [is] satisfied when police have probable cause to associate an object with criminal activity.

{¶ 14} "They felt—the officers felt, in particular Officer Hieber felt the lump in the leg, he immediately associated that with drugs. So he associated it with criminal activity, either cocaine possession or cocaine dealing, trafficking. * * * "

{¶ 15} On August 14, 2007, the trial court issued a written entry overruling the motion to suppress based on the reasons stated on the record after the hearing.

## II

{¶ 16} In his sole assignment of error, Lawson claims that the trial court erred in overruling his motion to suppress.

{¶ 17} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. See *State v. Morgan* (Jan. 18, 2002), Montgomery App. No. 18985, 2002 WL 63196. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id. at * 1.

{¶ 18} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. A traffic stop by a law-enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. A police officer may stop and detain a motorist when he observes a violation of the law, including any traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*. E.g.,

*State v. Stewart,* Montgomery App. No. 19961, 2004-Ohio-1319, 2004 WL 541162, ¶ 13; *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.

{¶ 19} First, Lawson claims that the stop of the vehicle was not based on probable cause. He asserts that there was reason to doubt the propriety of the stop, considering that the driver had told Hieber that he believed he had stopped. Hieber testified, however, that he observed the Grand Parisian fail to stop at the stop sign at the intersection of Delaware and Wheatley Avenues. Hieber also observed a second traffic violation before he was able to catch up with the vehicle and initiate a traffic stop. Based on these observed traffic violations, Hieber was justified in stopping the Grand Parisian.

{¶ 20} Lawson concedes that if the vehicle was lawfully stopped, Hieber was authorized to remove him from the vehicle. *Maryland v. Wilson* (1997), 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41. He next claims, however, that Hieber lacked the requisite suspicion to justify a pat-down for weapons. Lawson asserts that his movements in the vehicle could have been for a noncriminal purpose and that their presence in a high-crime area did not justify a search for weapons. Lawson further argues that the officers unlawfully exceeded the scope of pat-down for weapons.

{¶ 21} Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others. *State v. Molette,* Montgomery App. No. 19694, 2003-Ohio-5965, 2003 WL 22533030, ¶ 13. To justify a pat-down under *Terry,* "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Smith* (1978), 56 Ohio St.2d 405, 407, 10 O.O.3d 515, 384 N.E.2d 280.

{¶ 22} Based on the totality of the circumstances, we agree with the trial court that Hieber had a reasonable basis to believe that he might be in danger. Throughout the traffic stop, Hieber noticed Lawson fidgeting and moving his hands. The traffic stop occurred after dark in a dangerous area, and Hieber was initially alone with three individuals. Based on Lawson's behavior, Hieber indicated that he felt he needed to "keep an eye on" him. Although other officers had arrived when Lawson was frisked, those officers were involved with the driver of the Grand Parisian. Under these circumstances, Hieber was justified in conducting a pat-down for weapons in order to ensure his safety.

{¶ 23} Lawson asserts that the search of his clothing and the ultimate seizure of the drugs were nevertheless unlawful, because the officers unreasonably prolonged his detention and exceeded the scope of a protective frisk. He further argues that the trial court erred in applying the plain-feel doctrine to justify the seizure of the cocaine.

{¶ 24} Because a frisk under *Terry* is justified "solely by 'the protection of the police officer or others nearby, * * * it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" *State v. Woodward* (Feb. 22, 2002), Montgomery App. No. 18869, 2002 WL 272602, quoting *Terry*, 392 U.S. at 29, 88 S.Ct. 1868, 20 L.Ed.2d 889. "'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.'" *State v. Dickerson*, Montgomery App. No. 22452, 2008-Ohio-6544, 2008 WL 5196525, ¶ 19, quoting *Adams v. Williams* (1972), 407 U.S. 143, 145–146, 92 S.Ct. 1921, 32 L.Ed.2d 612.

{¶ 25} Initially, we agree with Lawson that the plain-feel doctrine does not apply in this case. Under the plain-feel doctrine, an officer conducting a pat-down for weapons may lawfully seize an object if he has probable cause to believe that the item is contraband. *Minnesota v. Dickerson* (1993), 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334; *State v. Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653, ¶ 41–42. The "incriminating character" of the object must be "immediately apparent." Id. The officers may not manipulate the object to determine its incriminating nature. Id.

{¶ 26} When questioned about the discovery of the "very large lump" during the pat-down for weapons, Hieber testified as follows:

{¶ 27} Q: "Okay. Did you have any idea what it was?

{¶ 28} A: "No. And that's the thing. I squeezed it at first. And initially, at first I thought it was so round and big and hard, I initially thought it may have been a golf ball. It was big as a golf ball or bigger than a golf ball. And then, as I manipulated it, felt it to try to determine what it was, I immediately felt like it could have been possibly drugs or could have been something else. I wasn't sure.

{¶ 29} Q: "Okay. Did you ultimately just come out and ask the Defendant, what do you have in your pants pocket?

{¶ 30} A: "Yeah. I asked him. I said, what is this.

{¶ 31} " * * *

{¶ 32} Q: "Okay. Did you at any time ask the other officers to assist you?

{¶ 33} A: "Yes. Two other officers were there. And I said to the other officers, I said, this individual here has something in the back of his pants, and

he's not telling me what it is. And then, they came over and they look[ed] at that and they felt it and squeezed it and felt it and then asked him the same thing, asked him what it was."

{¶ 34} Hieber's testimony establishes that the incriminating nature of the lump was not immediately apparent. The officer expressed that he did not immediately recognize the lump as contraband, and he manipulated the object in order to determine what it was. Although Hieber then suspected that the lump might be drugs, his testimony reflects a mere suspicion about the nature of the object. Accordingly, the seizure of the drugs plainly was not justified under the plain-feel doctrine.

{¶ 35} The more difficult question is whether the officers properly investigated the lump in Lawson's pocket when they could not immediately identify what the object was. In our view, the answer is no.

{¶ 36} In *Dickerson,* the United States Supreme Court expressly held that an officer could not explore an individual's pocket after having concluded that the object was not a weapon, stating that such a search "was unrelated to '[t]he sole justification of the search [under *Terry*:] * * * the protection of the police officer and others nearby.'" *Dickerson,* 508 U.S. at 378, 113 S.Ct. 2130, 124 L.Ed.2d 334, quoting *Terry,* 392 U.S. at 29, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[O]nce the officer determines from his sense of touch that an object is not a weapon, the pat down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing *Terry* as a pretext for a search for contraband." *State v. Evans* (1993), 67 Ohio St.3d 405, 414, 618 N.E.2d 162.

{¶ 37} In this case, there is no evidence that Hieber believed that the lump in Lawson's pocket was a weapon, and his testimony establishes that he did not immediately recognize the lump as contraband. To the contrary, Hieber testified that he initially believed that the lump was a golf ball. At this juncture, Hieber was obligated to cease his pat-down of Lawson's person concerning the lump in Lawson's pocket. The officer was not permitted to squeeze the lump or otherwise manipulate it. By manipulating the lump, the officers unlawfully extended the pat-down beyond the scope of a permissible protective search for weapons.

{¶ 38} We likewise conclude that the officers unreasonably prolonged Lawson's detention while investigating the lump.

{¶ 39} "When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver." *State v. Brown,* Montgom-

ery App. No. 20336, 2004-Ohio-4058, 2004 WL 1730132, ¶ 14. "The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable." Id. at ¶ 13, citing *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237. Routine questioning of passengers, such as a request for identification, is generally considered a consensual encounter and constitutes a minimal intrusion. Id. " 'Since "detention, not questioning, is the evil" at issue, it has been held that, so long as the traffic stop is valid, "any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention." ' " (Emphasis omitted.) *State v. Morgan* (Jan. 18, 2002), Montgomery App. No. 18985, 2002 WL 63196 *2, quoting *State v. Chagaris* (1995), 107 Ohio App.3d 551, 556–557, 669 N.E.2d 92, quoting *State v. Wright* (June 28, 1995), Medina App. No. 2371–M, 1995 WL 404964, *4.

{¶ 40} The record indicates that Hieber intended to frisk Lawson for weapons and place Lawson in his cruiser, where he intended to write the ticket for the driver of the Grand Parisian. It is apparent that the investigation of the lump in Lawson's pants delayed Hieber's completion of the traffic stop and continued Lawson's detention. Hieber testified that he did not suspect that the lump might be drugs until after he had manipulated the lump, which he was not permitted to do. We find no evidence that Hieber had a reasonable suspicion that Lawson had cocaine under his clothing prior to his manipulation of the lump. In the absence of such suspicion, Hieber had no basis for questioning Lawson about the nature of the lump, in extending the investigation of the lump, and in having other officers manipulate the lump. Consequently, Lawson's extended detention was not reasonable. Lawson's subsequent admission that he had cocaine and the officers' subsequent seizure of the powdered cocaine, both of which resulted from this unlawful continued detention and investigation, should have been suppressed.

{¶ 41} Lawson's assignment of error is sustained.

### III

{¶ 42} Having sustained the assignment of error, the judgment of the trial court will be reversed and the matter remanded for further proceedings.

Judgment reversed
and cause remanded.

BROGAN and FAIN, JJ., concur.