[Cite as *State v. Thompson*, 2014-Ohio-4244.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

       Plaintiff-Appellee

v.

PETE E.M. THOMPSON

       Defendant-Appellant


Appellate Case No.    26130

Trial Court Case No.   2013-CR-519


(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of September, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Pete E.M. Thompson, appeals from the decision of the Montgomery County Court of Common Pleas overruling his motion to suppress evidence on illegal search and seizure grounds. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On February 21, 2013, Thompson was indicted for one count of possessing heroin, a second-degree felony, with a one-year firearm specification; one count of possessing marijuana, a third-degree felony, with a one-year firearm specification; one count of having a weapon while under disability, also a third-degree felony, with a one-year firearm specification; and one count of improperly handling a firearm in a motor vehicle, a fourth-degree felony.

{¶ 3} Following his indictment, Thompson filed a motion to suppress evidence seized as a result of a February 13, 2013 encounter with Dayton Police Officer Jeff C. Hieber, which led to the indicted offenses. On December 27, 2013, the trial court held a hearing on the motion to suppress, during which time the only evidence presented was from Hieber, who testified as follows.

{¶ 4} On the evening of February 13, 2013, Hieber was on patrol in his cruiser at a Walgreen's located near the intersection of Salem and Victoria Avenues in Dayton, Ohio. While he was circling the Walgreen's parking lot, Hieber testified that he observed a vehicle traveling northeast on Victoria Avenue toward Salem Avenue at a fast rate of speed. Hieber then testified that he observed the vehicle abruptly turn left into the parking lot of a nearby cell phone store

without properly signaling. Hieber also testified that he noticed the vehicle had excessive window tint.

{¶ 5} After observing what he believed constituted several traffic violations, Hieber testified he saw the driver, later identified as Thompson, park his vehicle and quickly enter the cell phone store. In order to effectuate a traffic stop, Hieber drove his cruiser into the parking lot where Thompson's vehicle was parked. According to Hieber, as he entered the parking lot, Thompson was just "standing by the front door as if [he] was going to maybe run out[.]" Trans. (Sept. 11, 2013), p. 7. Because Hieber thought Thompson might flee, Hieber testified that he decided to make contact with Thompson inside the store.

{¶ 6} Upon entering the store, Hieber testified that he observed Thompson sitting in a waiting chair. Hieber then testified he "walked up to [Thompson]–identified himself as an officer and explained to him that he needed to speak with him a second about his window tint of his vehicle." *Id*. at 13. In response, Hieber testified that Thompson became very defensive, stood up and loudly exclaimed that he had done nothing wrong. Hieber also testified that Thompson denied that he arrived in the vehicle parked outside, claiming instead that he had arrived on foot.

{¶ 7} Continuing, Hieber testified that he explained to Thompson that he saw him park his vehicle and enter the store, and again informed Thompson that "he just wanted to talk to him about his car." *Id*. at 15. Still, Hieber testified that Thompson loudly and excitedly exclaimed that he had done nothing wrong and continued to escalate the situation. During this time, Hieber described Thompson's behavior as "spastic," claiming he was "moving his arms about," and that he was "totally uncooperative." *Id*. at 14-15.

**{¶ 8}**  Following Thompson's outburst, Hieber testified that he tried to escort Thompson from the store by his elbow.  At that point, however, Thompson said "I'm not going anywhere."  Trans. (Sept. 11, 2013)*,* p. 15.  Hieber testified that he then tried a second time to escort Thompson out the store by his elbow, but that Thompson pulled away from him.  As a result, Hieber drew his taser in an effort to gain compliance and told Thompson that he was going to conduct a pat down of his person.  When asked, Hieber stated that he decided to conduct a pat down for his safety and for the safety of the patrons in the store as he thought Thompson may have a weapon based on his actions and lack of cooperation.  Hieber also testified that it was cold outside and that Thompson had layers of clothes on in which a weapon could have been concealed.

**{¶ 9}**  In order to conduct the pat down, Hieber testified that he ordered Thompson to place his hands on the wall.  However, as he attempted to pat Thompson down, Hieber testified that Thompson reached for his right pants pocket.  Hieber then testified that he told Thompson to put his hand back on the wall, and continued to attempt to pat him down.  On his second attempt, Hieber testified that Thompson again took his hand off the wall and started reaching for his right pants pocket.  For safety reasons, Hieber testified that he then placed Thompson in handcuffs and escorted him out of the store.

**{¶ 10}**  Hieber further testified that as he attempted to unlock his cruiser door, he turned around and noticed Thompson again trying to pull something out of his right pants pocket.  Hieber then testified that he saw the top part of a cellophane bag sticking out of Thompson's pocket.  Upon seeing the bag, Hieber told Thompson to stop and thereafter completed a pat down and immediately recognized the contents of the pocket as drugs.  Hieber then retrieved the

bag from Thompson's pocket, and identified the contents as rock heroin. Thereafter, Hieber testified that he placed Thompson in the back of his cruiser and Mirandized him. Hieber also testified that he issued Thompson a citation for having excessive window tint and told him that his vehicle would be towed and inventoried.

{¶ 11} The inventory search of Thompson's vehicle yielded additional contraband, and a search warrant was thereafter obtained on February 14, 2013, for the trunk and glove box, which were both locked at the time of the inventory. The search warrant, supporting affidavit, and inventory receipt were admitted as evidence at the suppression hearing.

{¶ 12} The affidavit in support of the search warrant stated that: "During the inventory[,] Officer Speelman located a brown bag underneath the seat in the vehicle which contained 28 grams of marijuana, a set of scales, and multiple baggies." State's Exhibit 2: Affidavit for Search Warrant (Feb. 19, 2013), p. 1. In addition, the affidavit stated that: "At the locked trunk area[,] Officer Speelman could smell a strong odor of raw marijuana." *Id*. at 2. After the search warrant was issued , additional contraband, including a firearm and marijuana, were found in the locked portions of Thompson's vehicle. See State's Exhibit 2: Inventory and Receipt (Feb. 19, 2013), p. 1.

{¶ 13} After the suppression hearing, the trial court issued a written decision denying Thompson's motion to suppress the contraband found on his person and in his vehicle. In considering the totality of the circumstances, the trial court found that Hieber was justified in escorting Thompson from the cell phone store and in conducting a pat-down search for his safety and the safety of the store patrons due to Thompson: lying about driving the vehicle; escalating the encounter by being uncooperative; yelling at Hieber; and being defensive. The trial court

also found that after Hieber had discovered the heroin in Thompson's pocket, Hieber had probable cause to search his vehicle as well as request a warrant to search the locked trunk.

{¶ 14}   Following the trial court's decision on his motion to suppress, Thompson pled no contest to possession of heroin in an amount greater than 10 grams but less than 50 grams in violation of R.C. 2925.11(A), as well as having weapons while under disability in violation of R.C. 2923.13(A)(3).   The State then dismissed the firearm specifications and the charges for possessing marijuana and improperly handling a firearm.   At sentencing, the trial court imposed a total prison term of two years for Thompson's offenses.

{¶ 15}   Thompson now appeals from the trial court's decision denying his motion to suppress, raising one assignment of error for review.


**Assignment of Error**

{¶ 16}   Thompson's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.

{¶ 17}   Under his sole assignment of error, Thompson argues the trial court erred in denying his motion to suppress, because his detention in the cell phone store and the initial pat-down search for weapons was unlawful.   Thompson also argues that Hieber conducted an unlawful seizure when he arrested him in the cell phone store without having probable cause to believe that he was engaged in criminal activity other than the traffic violations, which are not arrestable offenses.   In addition, Thompson challenges the warrantless search of his vehicle.

{¶ 18}   In ruling on motions to suppress, the trial court "assumes the role of the trier of

fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." (Citation omitted.) *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id*.

{¶ 19} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Evidence is inadmissible if it stems from an unreasonable search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 484-485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the " 'few specifically established and well delineated exceptions.' " *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Thompson v. Louisiana*, 469 U.S. 17, 20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). (Other citations omitted.)

### *Thompson Was Lawfully Detained*

{¶ 20} Initially, Thompson argues that he was unlawfully detained due to Hieber approaching him in the cell phone store as opposed to waiting for him to return to his vehicle to address the traffic violations. We disagree.

{¶ 21} Under *Terry*, police officers may briefly stop and temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Jones*, 70 Ohio App.3d 554, 556, 591 N.E.2d 810 (2d Dist.1990). "A police officer may stop and detain a motorist when he observes a

violation of the law, including any traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*." (Citations omitted.) *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 11.

{¶ 22} As noted earlier, the record establishes that Hieber observed Thompson commit several traffic violations immediately prior to entering the cell phone store. As a result, Hieber testified that he decided to approach Thompson about the offenses inside the store because it looked like Thompson might flee. Thompson provides no authority for his proposition that it was unlawful for Hieber to approach him in the store. We fail to see how Thompson's location in the store affects Hieber's ability to proceed with the traffic stop at issue. The fact remains that Thompson committed a traffic violation and was subject to being detained by Hieber for purposes of addressing his violations.

{¶ 23} Accordingly, we conclude that Thompson's detention in the cell phone store was lawful.

### The Heroin Found On Thompson Was Seized
### Pursuant To A Lawful Pat-Down Search

{¶ 24} Thompson next challenges the legality of the pat-down search and claims that Hieber had no justification for effectuating a pat down, because he had no reason to believe that Thompson was armed. We again disagree.

{¶ 25} "Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others." (Citation omitted.) *State v. Lawson*, 180 Ohio App.3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 21 (2d Dist.). " 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of

violence * * *.' " *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993), quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**{¶ 26}** In order to justify a pat down, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Footnote omitted.) *Terry*, 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (Citations Omitted.) *Id.* at 27. *Accord State v. Grefer*, 2d Dist. Montgomery No. 25501, 2014-Ohio-51, ¶ 24.

**{¶ 27}** Here, Hieber testified that he initially attempted to pat Thompson down on two occasions inside the cell phone store after Thompson's actions led him to believe that his safety and the safety of the store patrons may have been in danger. At that point in time, Thompson had: (1) lied to Hieber about driving to the store; (2) stood up and yelled excitedly at Hieber multiple times while flailing his arms; (3) was defensive and refused to calm down after Hieber merely asked to talk to him about his window tint; and (4) was uncooperative when Hieber asked him to come outside the store. Hieber also testified that it was cold outside and that Thompson had layers of clothes on in which a weapon could have been concealed. Based on the totality of these circumstances, we conclude that the initial pat down attempts in the cell phone store were justified.

**{¶ 28}** The pat down, however, could not be completed in the cell phone store, because Thompson continually tried to place his hand in his right pants pocket. Accordingly, Hieber was unable to discern whether Thompson had a weapon and therefore, chose to handcuff him and

escort him out the store. After they were outside the store, Thompson again reached for his right pants pocket and began pulling out a cellophane bag while Hieber was turned around. When Hieber saw the top of the bag emerging from Thompson's pocket, he told Thompson to stop and subsequently completed the pat-down search. Due to Thompson's behavior inside the store, his repeated attempts to reach his pocket, and his attempt to pull out a cellophane bag while Hieber was not looking, we find that the completed pat-down search outside the store was justified as well.

{¶ 29} We also note that the heroin found as a result of the pat down was lawfully seized by Hieber. "While a police officer is conducting a lawful pat-down search for weapons, the officer may retrieve any contraband or incriminating evidence that he feels during the course of the pat-down, as long as the incriminating character of the contraband is immediately apparent to the officer through his sense of touch." *State v. Jones*, 2d Dist. Montgomery No. 19248, 2002-Ohio-4681, ¶ 10, citing *Dickerson*, 508 U.S. at 375-376, 113 S.Ct. 2130, 124 L.Ed.2d 334. An object's incriminating character is immediately apparent if the police officer has probable cause to associate the object with criminal activity. *State v. Halczyszak*, 25 Ohio St.3d 301, 496 N.E.2d 925 (1986), paragraph three of syllabus. "Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be 'a fair probability' that the object they see is illegal contraband or evidence of a crime." *State v. Thompson*, 134 Ohio App.3d 1, 4, 729 N.E.2d 1268 (2d Dist.1999), quoting *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus.

{¶ 30} The State is not required "to offer evidence showing 'why' an officer reached a particular conclusion about the identity of an article that justifies a search and subsequent seizure

of the object. It is sufficient that the officer testifies that he reached the conclusion because the identity of the object was immediately apparent to him. Why it was immediately apparent may be inferred from the officer's experiences with similar objects in past situations." *State v. Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653, ¶ 44 (2d Dist.).

{¶ 31} Here, Hieber testified that he has been a City of Dayton police officer for 12 and a half years and that he has previously made a number of arrests for drugs and guns in the area in which he encountered Thompson. He further testified that upon patting down Thompson's pocket, he immediately recognized the contents to be drugs. Pursuant to *Phillips*, it may be inferred from the record that Hieber recognized the contents as drugs based on his past experience as an officer. There was also sufficient probable cause for Hieber to believe the contents of Thompson's pocket was associated with criminal activity because Thompson reached for his pocket multiple times and attempted to pull out the cellophane bag while Hieber was not looking.

{¶ 32} Accordingly, we find the heroin was lawfully seized as a result of the pat-down search.

### The Investigative Detention Did Not Transform Into An Arrest Upon Thompson Being Handcuffed

{¶ 33} Thompson next claims that Hieber unlawfully arrested him in the cell phone store without having probable cause to believe that he was engaged in criminal activity other than traffic violations, which are not arrestable offenses. He claims that he was arrested upon being handcuffed.

{¶ 34} "Force may be used, even in the form of handcuffs, during a *Terry* stop if it is

reasonably necessary and is limited in scope and duration." (Citation omitted.) *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *6, fn. 1 (Jan. 18, 2002). "Handcuffing a suspect in the course of an investigative detention does not necessarily turn that investigative detention into an arrest, so long as handcuffing is reasonable under the circumstances; for instance, to maintain the status quo and prevent flight." *State v. Carter*, 2d Dist. Montgomery No. 21145, 2006-Ohio-2823, ¶ 20.

{¶ 35} "Handcuffing generally only occurs during a *Terry* stop if the individual is dangerous or resisting the officers and it is necessary to complete the frisk." (Citation omitted.) *White* at *6, fn. 1. "Whether handcuffing or other methods of detention are reasonable 'depends on whether the restraint was temporary and lasted no longer than was necessary to effectuate the purpose of the stop, and whether the methods employed were the least intrusive means reasonably available to verify the officers' suspicions in a short period of time.' " *State v. Payne*, 2d Dist. Montgomery No. 13898, 1994 WL 171215, *4 (May 4, 1994), quoting *United States v. Glenna*, 878 F.2d 967, 972 (7th.Cir.1989). (Other citations omitted.)

{¶ 36} In this case, Hieber's act of handcuffing Thompson was reasonable under the attendant circumstances. The record demonstrates that Thompson was upset, uncooperative and kept reaching for his right pants pocket while Hieber attempted to pat him down, thus prohibiting Hieber from completing a pat down inside the store. Handcuffing Thompson was a reasonable means to complete the pat down and to remove the potential risk of Thompson pulling out a weapon. *See, e.g., State v. Dunson*, 2d Dist. Montgomery No. 20961, 2006-Ohio-775, ¶ 17 (holding that officers were entitled to handcuff the defendant for an investigative stop, because the defendant was reaching for his waistband, and the detectives feared that he was reaching for a

weapon). The duration of the handcuffing was also reasonable as the heroin was found immediately after Hieber was able to complete the pat-down search. Accordingly, we do not find that Thompson was under arrest at that point in time, but instead subject to lawful force during an investigative detention.

### Contraband Was Lawfully Discovered In the Locked Portions Of Thompson's Vehicle

{¶ 37} Thompson claims the initial search of his vehicle was unlawful because it was performed without a search warrant. Specifically, he claims the contraband that was obtained during the initial warrantless search provided the basis for the search warrant that was issued for the locked portions of his vehicle, which revealed additional contraband that led to his charged offenses.

{¶ 38} The State, on the other hand, contends the initial search of Thompson's vehicle was an inventory search that falls under the inventory exception to the warrant requirement. "[T]he 'inventory exception' to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle." (Citations omitted.) *State v. Pullen*, 2d Dist. Montgomery No. 24620, 2012-Ohio-1858, ¶ 13. To satisfy the inventory exception, the vehicle must be lawfully impounded, the inventory search must be conducted pursuant to reasonable standardized procedures and also not be a pretext for an evidentiary search. *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979); *State v. Parker*, 2d Dist. Montgomery No. 24406, 2012-Ohio-839, ¶ 25; *State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, ¶ 13. With respect to the standardized policy requirement, " 'the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and

show how the officer's conduct conformed to that policy.' " *Id*., quoting *State v. Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011, *4 (July 25, 1997).

**{¶ 39}** In this case, the record contains no evidence demonstrating that the officers conducted the initial search of Thompson's vehicle pursuant to a standardized inventory search policy. Accordingly, we conclude there is insufficient evidence to apply the inventory exception to the initial warrantless search of Thompson's vehicle. Our conclusion, however, does not affect the outcome of this case, because the record indicates that a search warrant for the locked portions of Thompson's vehicle was issued after the inventory search. The affidavit in support of the search warrant stated that a strong odor of marijuana was detected at the locked trunk area; therefore, the warrant was not solely based on the contraband found during the inventory search.

**{¶ 40}** "The United States Supreme Court has long acknowledged that odors may be persuasive evidence to justify the issuance of a search warrant." *State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000), citing *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948). Moreover, " '[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search.' " *State v. Chase*, 2d Dist. Montgomery No. 25322, 2013-Ohio-2346, ¶ 34, quoting *Moore* at syllabus. "[A] law enforcement officer, who is trained and experienced in the detection of marijuana, should not be prohibited from relying on his or her sense of smell to justify probable cause to conduct a search for marijuana." *Moore* at 51.

**{¶ 41}** Because the officer in this case detected the odor of raw marijuana near the locked trunk, he had probable cause to conduct a search. Moreover, the officer obtained a valid search warrant for the locked portions of the vehicle based on the odor, thus the search of those

areas of the vehicle were lawful regardless of any deficiency in the inventory search. The search of the locked portions of the vehicle revealed additional contraband, including a firearm and marijuana, which led to Thompson's charges. Therefore, the initial warrantless search has no bearing on this case, as the subsequent search of the locked portions of the vehicle did not violate Thompson's Fourth Amendment rights.

{¶ 42} For the foregoing reasons, we do not find that the trial court erred in overruling Thompson's motion to suppress. Therefore, Thompson's sole assignment of error is overruled.

## Conclusion

{¶ 43} Having overruled Thompson's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
April F. Campbell
Jay A. Adams
Hon. Barbara P. Gorman