[Cite as *State v. Wheeler*, 2017-Ohio-4013.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27282 |
| | : | |
| v. | : | T.C. NO. 15-CR-3208 |
| | : | |
| ERIC WHEELER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___26th___ day of _____May_____, 2017.

. . . . . . . . . .

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CHARLES E. McFARLAND, Atty. Reg. No. 0031808, 338 Jackson Road, New Castle, Kentucky 40050
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Eric Wheeler appeals his conviction and sentence for one count of possession of cocaine (twenty grams but less than twenty-seven grams), in violation of R.C. 2925.11(A) & R.C. 2925.11(C)(4)(d), a felony of the second degree.

Wheeler filed a timely notice of appeal with this Court on May 13, 2016.

{¶ 2} The incident which forms the basis for the instant appeal occurred on the night of October 15, 2015, at approximately 10:15 p.m. when Dayton Police Officer Mark Orick was assisting other officers with the recovery of a stolen vehicle near the intersection of North Main Street and Parkwood Avenue in Dayton, Ohio. After engaging in a foot chase of a separate suspect involved in the vehicle theft, Officer Orick began walking northbound on the west side North Main Street in order to recover some property the officer discarded during the chase. When he reached the intersection of North Main Street and Laura Avenue, Officer Orick observed an individual, later identified as the appellant, Wheeler, standing on the opposite side of North Main Street. Officer Orick testified that he also observed an unidentified female sitting on the steps of a vacant house on the same side of North Main Street where he was walking. Officer Orick further testified that Wheeler and the female subject were the only people he observed in the vicinity at that time. Officer Orick testified that the area where he was located is a high-crime area from which the Dayton Police Department receives approximately eighty drug related complaints on a monthly basis.

{¶ 3} Shortly after observing Wheeler and the female, Officer Orick heard a loud noise which he immediately identified as a gunshot based upon his training and experience. Officer Orick testified that gunshot came from the area where Wheeler was located on North Main Street. Significantly, Officer Orick testified that he recognized the loud noise as a gunshot because he had been fired upon previously in the line of duty. After hearing the gunshot, Officer Orick observed the female sitting in the doorway visibly recoil from the sound. Officer Orick then looked across the street at Wheeler and

observed that he did not exhibit any surprise or shock at the sound of the gunshot. Rather, Officer Orick testified that while maintaining eye contact with him, Wheeler began slowly walking backwards while placing something on the ground with a light throwing motion.

{¶ 4} Believing that Wheeler fired the gunshot, Officer Orick drew his service weapon and ordered him to get down on the ground. Wheeler did not comply with Officer Orick's order and continued walking backwards. At that point, Sergeant Riegel arrived at the scene in his cruiser to assist Officer Orick. Together, Officer Orick and Sgt. Riegel placed Wheeler on the ground and handcuffed him.

{¶ 5} Shortly thereafter, Officer Jason Berger arrived at the scene in his police cruiser. Officer Berger testified that he also heard the noise that Officer Orick believed to be a gunshot. While Officer Berger testified that he did not identify the noise as a gunshot, he admitted that Officer Orick was a great deal closer to Wheeler, and therefore in a better position to perceive the nature of the threat. Officer Orick and Sgt. Riegel handed the handcuffed Wheeler off to Officer Berger so that they could check the area for a gun. We note that the officers did not locate any guns during their search, but did find a water bottle that Wheeler had placed on the ground while being approached by Officer Orick.

{¶ 6} Informed by Officer Orick that Wheeler was suspected of having fired a gunshot, Officer Berger conducted a *Terry* pat down for his own safety. While patting Wheeler down, Officer Berger, without any manipulation, immediately felt what he recognized to be a gel cap used to package and sell heroin in Wheeler's right front pants pocket. Officer Berger proceeded to remove the gel cap from Wheeler's pocket where

he also discovered two baggies containing crack cocaine. Officer Berger did not recover any weapons from Wheeler. Officer Berger testified that he placed Wheeler under arrest and read him his *Miranda* rights. Thereafter, Wheeler invoked his right to counsel, and Officer Berger transported him to the Safety Building for processing.

{¶ 7} On October 23, 2015, Wheeler was indicted for one count of possession of cocaine, a felony of the second degree, and one count of possession of heroin, a felony of the fifth degree. At his arraignment on November 5, 2015, Wheeler pled not guilty to the charges contained in the indictment.

{¶ 8} On November 10, 2015, Wheeler filed a motion to suppress all of the physical evidence obtained by police during Officer Berger's pat-down on October 15, 2015. A hearing was held before the trial court on said motion on February 11, 2016. On May 13, 2016, the trial court issued a decision and entry overruling Wheeler's motion to suppress.

{¶ 9} On August 25, 2016, Wheeler pled no contest to one count of possession of cocaine (twenty grams but less than twenty-seven grams), in violation of R.C. 2925.11(A) & R.C. 2925.11(C)(4)(d), a felony of the second degree. In return for Wheeler's no contest plea, the State dismissed the remaining count for possession of heroin. On September 28, 2016, the trial court sentenced Wheeler to a mandatory two years in prison and waived payment of the mandatory fine. Wheeler's judgment entry of conviction was filed the next day on September 29, 2016.

{¶ 10} It is from this judgment that Wheeler now appeals.

{¶ 11} Wheeler's first assignment of error is as follows:

{¶ 12} "THE TRIAL COURT ERRED IN RECORDING IN THE TERMINATION

ENTRY THAT WHEELER HAD PLED GUILTY TO POSSESSION OF COCAINE AND HEROIN."[1]

{¶ 13} In his first assignment, Wheeler contends that the trial court erred since it characterized his plea as guilty when in fact the plea was no contest. Initially, we note that the State concedes that the trial court erred in this respect. Although the trial court did not correctly state in the judgment entry of conviction that Wheeler had pled no contest, Wheeler has not alleged or demonstrated any prejudice in his sentencing as a result of this clerical error. *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, ¶ 24.

{¶ 14} It is clear from the record, especially the plea form signed by the parties, that everyone understood Wheeler was pleading no contest to one count of possession of heroin. As we recently held in *State v. Mayberry,* 2014–Ohio–4706, 22 N.E.3d 222, ¶ 34 (2d Dist.), when it is necessary for the trial court to correct its sentencing entry, we will remand the case for correction of the error. Therefore, upon remand, the trial court may issue a nunc pro tunc order and entry with imposition of sentence that properly identifies the no contest plea. *Redavide* at ¶ 24.

{¶ 15} Wheeler's first assignment of error is sustained.

{¶ 16} Wheeler's second assignment of error is as follows:

{¶ 17} "THE TRIAL COURT ERRED IN DENYING DEFENDANT WHEELER'S MOTION TO SUPPRESS THE DISCOVERY OF DRUGS BY OFFICER BERGER."

---

[1] We note that although the record clearly establishes that Wheeler pled no contest to one count of possession of cocaine, his judgment entry of conviction incorrectly states that he pled guilty to the charge. We further note that Wheeler's first assignment incorrectly suggests that he was convicted of two charges when in fact one count (possession of heroin) was dismissed upon a no contest plea to possession of cocaine.

{¶ 18} In his second and final assignment, Wheeler argues that the trial court erred when it overruled his motion to suppress. Specifically, Wheeler argues that Officer Orick did not have a reasonable, articulable suspicion sufficient to justify a brief investigatory stop to detain and question him concerning his involvement or knowledge of the gunshot Officer Orick reported to have heard. Wheeler also contends that the pat-down performed by Officer Berger was limited to searching for weapons. Therefore, Wheeler asserts that the drugs found in his possession during the pat-down should have been suppressed.

{¶ 19} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter,* 72 Ohio St.3d 545, 552, 651 N.E.2d 965 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist.1997).

{¶ 20} "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Investigatory detention, often referred to as a *Terry* stop, allows an officer to briefly stop and temporarily detain individuals in order to investigate

possible criminal activity. *State v. Strozier,* 172 Ohio App.3d 780, 2007–Ohio–4575, 876 N.E.2d 1304 (2d Dist.), citing *Terry v. Ohio.* An investigatory stop does not constitute an arrest or place the suspect in custody. *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 16 (10th Dist.). It is well established that "[a]n individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *State v. Love,* 2d Dist. Montgomery No. 23902, 2011–Ohio–1287, ¶ 18, quoting *In re D.W.,* 184 Ohio App.3d 627, 2009–Ohio–5406, 921 N.E.2d 1114, ¶ 13–16 (2d Dist.).

{¶ 21} During a brief investigatory stop, without placing the suspect in custody or under arrest, an officer is entitled to ask questions to confirm his suspicions that criminal activity occurred. During a *Terry* stop, an officer can ask for identification or sufficient information to write a citation or to run a background check for outstanding warrants, often called a "field investigation". *State v. Wortham,* 145 Ohio App.3d 126, 761 N.E.2d 1151 (2d Dist.2001). *See also State v. Harrison,* 2d Dist. Montgomery No. 25128, 2013–Ohio–1235.

{¶ 22} Also, during a *Terry* stop, it is sometimes considered reasonable for the investigating officer to conduct a "protective search" by patting down the suspect to discover and remove weapons. *State v. Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762 (1997); *State v. Andrews,* 57 Ohio St.3d 86, 89, 565 N. E.2d 1271 (1991). The primary purpose of a protective search and seizure is to assure public and officer safety. "Pursuant to *Terry,* police officers are allowed to perform limited protective searches for concealed weapons when the surrounding circumstances create a suspicion that an

individual may be armed and dangerous." *State v. Harding,* 180 Ohio App.3d 497, 2009–Ohio–59, 905 N.E.2d 1289 (2d Dist.), *overruled on other grounds, State v. Gardner,* 2d Dist. Montgomery No. 24308, 2011–Ohio–5692.

{¶ 23} "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *State v. Evans,* 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993), quoting *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *see also State v. Olden,* 2d Dist. Montgomery No. 23137, 2010–Ohio–215, ¶ 25. In other words, "the protective pat down under *Terry* is limited in scope to its protective purpose and cannot be employed by the searching officer to search for evidence of crime." *State v. Holley,* 2d Dist. Montgomery No. 20371, 2004–Ohio–4264, ¶ 10.

{¶ 24} "The frisk, or protective search, approved in *Terry* is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous. While probable cause is not required, the standard to perform a protective search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances. The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *State v. Millerton,* 2015–Ohio–34, 26 N.E.3d 317, ¶ 27 (2d Dist.), quoting *State v. Andrews,* 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶ 25} "These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). Accordingly, the court must take

into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. *Id.*" *State v. Heard,* 2d Dist. Montgomery No. 19322, 2003–Ohio–906, ¶ 14.

**{¶ 26}** In the instant case, the record establishes that just after investigating a separate criminal incident, Officer Orick was walking down a section of North Main Street known as a high-crime area with significant drug activity. *Compare State v. Andrews,* 57 Ohio St.3d 86, 88, 565 N.E.2d 1271 (1991) (stating that "[a]n area's reputation for criminal activity is an articulable fact which is a part of the totality of circumstances surrounding a stop to investigate suspicious behavior"). Almost immediately after observing Wheeler walking down the opposite side of the street, Officer Orick heard what he identified, based upon his training and experience, as a gunshot coming from the area where Wheeler was walking. Believing that Wheeler was possibly armed and dangerous, Officer Orick drew his weapon and ordered Wheeler to stop and lay down on the ground. Not only did Wheeler *not* immediately stop and do as Officer Orick ordered, he kept walking backwards away from the officer. Wheeler also placed something on the ground with a light throwing motion, while still walking backwards away from Officer Orrick. Turning and walking away upon seeing a police officer, or other nervous and evasive behavior, can be considered by an officer in the reasonable suspicion determination. *State v. Sellers,* 2d Dist. Montgomery No. 26121, 2014–Ohio–5366, ¶ 15 (suspect's change of direction upon seeing police car is a fact to be considered in reasonable suspicion determination). It was only after Sgt. Riegel arrived that Wheeler stopped walking away, and the officers were able to handcuff him and place him on the ground. The preceding factors combine to create a reasonable suspicion that Wheeler had committed or was

committing an offense. Therefore, Officer Orick's initial decision to stop Wheeler was lawful. We also find that, contrary to Wheeler's assertion, the trial court did not direct the testimony of Officer Orick in any way.

{¶ 27} Additionally, Officer Berger's frisk was lawful. "Authority to conduct a pat down search for weapons does not automatically flow from a lawful stop." *State v. Stewart,* 2d Dist. Montgomery No. 19961, 2004–Ohio–1319, ¶ 16. An officer may search a lawfully stopped suspect for weapons "if the officer reasonably believes the suspect may be armed." *State v. Montague,* 2d Dist. Montgomery No. 25168, 2013–Ohio–811, ¶ 13, citing *State v. Evans,* 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). Wheeler argues that Officer Berger's decision to conduct a pat down was not justified because he testified that he did not initially think that the loud noise he heard was a gunshot. Officer Berger clarified his testimony by stating that Officer Orick was closer in proximity to where the loud noise originated; thus, Officer Orick was in a better position to ascertain whether the loud noise was actually a gunshot. We note that the trial court expressly found Officer Orick and Berger to be "credible in every respect."

{¶ 28} Although not discussed by the trial court, we note that whether probable cause exists must be determined by examining the collective knowledge of the police. *United States v. Barraza,* 492 F.Supp.2d 816 (S.D.Ohio 2005); *Thacker v. City of Columbus,* 328 F.3d 244, 256 (6th Cir.2003). Moreover, the determination of probable cause requires an examination of the objective reasonableness of the facts with the officers' subjective intentions being irrelevant. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Here, Officer Berger was acting on an order from Officer Orick to stop and frisk an individual that he concluded may be armed and

dangerous. Regarding the stop and frisk, Officer Orick's knowledge supporting his reasonable articulable suspicion that Wheeler was armed and dangerous may reasonably be imputed to Officer Berger. *See Sellers* at ¶ 19 ("whether probable cause exists must be determined by examining the collective knowledge of the police.") It is well-established that when an order to stop or arrest a suspect is communicated to officers in the field, the underlying facts constituting probable cause need not be communicated, so long as the individual or agency issuing the order can justify the intrusion on Fourth Amendment rights. *See United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

{¶ 29} In *Wortham,* we stated that:

If an officer detains an individual suspected of criminal behavior in reliance on information received from a fellow officer, who has a reasonable suspicion to make a stop, he need not have independent grounds for suspecting criminal activity but may rely on the information given via the dispatch. However, the [S]tate must show that the officer who provided the information had a valid reasonable suspicion of criminal activity.

*Wortham*, 145 Ohio App.3d 126, 130, 761 N.E.2d 1151, citing *Maumee v. Weisner,* 87 Ohio St.3d 295, 298, 720 N.E.2d 507 (1999). In light of the preceding analysis, Officer Berger had a reasonable and articulable belief that Wheeler may have been armed and posed a danger to the officers. Accordingly, Officer Berger was entitled to conduct a limited protective search for weapons for his safety.

{¶ 30} The closest question, however, is whether, in the course of the pat down for weapons, Officer Berger lawfully seized the heroin gel cap and the two baggies containing

cocaine from Wheeler's pocket.

{¶ 31} Under the plain feel doctrine, an officer conducting a pat down for weapons may lawfully seize an object if he has probable cause to believe that the item is contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *State v. Phillips,* 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653, ¶ 41-42 (2d Dist.). The "incriminating character" of the object must be "immediately apparent," meaning that the police have probable cause to associate an object with criminal activity. *Dickerson,* 508 U.S. at 375; *State v. Buckner,* 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 9. The officer may not manipulate the object to identify the object or to determine its incriminating nature. *Dickerson, supra*; *State v. Lawson,* 180 Ohio App.3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 25 (2d Dist.).

{¶ 32} The criminal character of an object may be immediately apparent because of the nature of the article and the circumstances in which it is discovered. *State v. Dunson,* 2d Dist. Montgomery No. 22219, 2007-Ohio-6681, ¶ 24. "In that situation, the totality of those circumstances, including the officer's experience and explanation, must be sufficient to present probable cause to believe that the identity of the object he feels is specific to criminal activity." *Id.*

{¶ 33} Regarding the pat down of Wheeler, Officer Berger provided the following testimony:

The State: Officer Berger, can you describe for the Court how you did the pat down?

Officer Berger: When I do a pat down, initially I go to the waist and do a flat across – around the waist. And I go down the pant legs, flat hand,

both one on the outside, one on the inside, straight down the leg, each let [sic]. Then I go up the torso and over the arms.

Q: Okay. *And you said it's a flat hand? You never manipulate your hand in any way?*

A: *No.*

Q: Just move it straight up and down?

A: Correct.

Q: And you conducted a pat down just like this on Mr. Wheeler, correct?

A: Yes.

Q: And describe for the Court how that pat down went.

A: I felt a gel capsule in Mr. Wheeler's right pants pocket.

Q: *And how did you know that that was a gel capsule?*

A: *I've encountered many gel capsules containing felony drugs, just working the streets.*

Q: *So in your training experience, you felt what you knew to be a gel capsule?*

A: Yes.

Q: And you were able to retrieve that gel capsule?

A: Yes.

Q: And when you –describe for the Court how you did that.

A: When I went in to retrieve the gel capsule, I just pulled two baggies of what appeared to be crack cocaine.

**{¶ 34}** The trial court found that based on his training and law enforcement experience, Officer Berger's testimony that he immediately knew what he felt in Wheeler's right pants pocket was a gel capsule likely containing illegal contraband was credible. We agree. As is clear from the above excerpt, Officer Berger's testimony made clear that the probable illegal nature of the gel capsule was immediately apparent to him. *State v. Price*, 2d Dist. Montgomery No. 25362, 2013-Ohio-2020, ¶ 15.

**{¶ 35}** In its decision overruling the motion to suppress, the trial court correctly concluded that Officer Orick had a reasonable, articulable suspicion that Wheeler was armed and that this suspicion justified the subsequent pat down. The trial court also correctly concluded that Officer Berger's knowledge regarding the shape and feel of gel capsules and his belief that he felt a gel capsule in Wheeler's pants pocket provided probable cause and justified the seizure of the gel capsule and the two baggies of cocaine. Upon review, we conclude that the trial court's factual conclusions are supported by competent, credible evidence, and it did not err in refusing to suppress the State's evidence.

**{¶ 36}** Wheeler's second assignment of error is overruled.

**{¶ 37}** Wheeler's first assignment of error having been sustained, this cause is remanded for the sole purpose of correcting the termination entry to reflect the correct nature of the plea. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.

Copies mailed to:

Michael J. Scarpelli
Charles E. McFarland

Hon. Steven K. Dankof