OPINION
{¶ 1} Donald Eugene Wilks appeals from his conviction of possession of cocaine pursuant to his no contest plea. Wilks entered the plea after the trial court overruled his motion to suppress the cocaine found when he was arrested.
 {¶ 2} The facts underlying this appeal are set out in the appellant's brief and are as follows:
 {¶ 3} On March 25, 2003, at approximately 2:13 p.m., Officer John J. Beall of the Dayton Police Department was dispatched to 1203 Edison in the City of Dayton pursuant to a 911 call from an unknown caller. The caller told the call evaluator some details but then the phone was left off the hook and, according to Officer Beall, the call evaluator was uncertain as to what was exactly occurring at 1203 Edison. Officer Beall testified that, when he was dispatched to this location he knew that a lady from 1203 Edison had called and stated that something was going on at the side of her house. Beall arrived at the location within two or three minutes as he was only a mile to a mile and a half away at the time of dispatch. Officer Beall testified that he had been to 1203 Edison, "several years ago," when he made a drug arrest of a man named Ivory Richardson.
 {¶ 4} Officer Beall testified that, when he arrived at the house, he observed Officer Stutz walking up to Richardson who was standing at the side of the house next to a blue car, and Officer Beall observed another subject inside a white car in the driver's seat. Wilks was the driver of the white car.
 {¶ 5} Officer Beall testified that he got out of his marked cruiser to go see what Officer Stutz was doing and, at this point, Wilks' pulled his vehicle out onto Willard Street traveling very slowly and without signaling when he left the curb. Officer Beall testified that he was standing in the road waiting for this white car to go by him and, as it pulled up to him, the car stopped and Wilks looked at him. Officer Beall started looking at the driver and, at this point, Officer Beall testified that, "I looked beside him, you know, the car, in the Cutlass, that he was driving. And right inside, in the middle of the bench seat was a bag of marijuana, which was a clear plastic bag." Officer Beall testified that he has had previous experience with marijuana and was familiar with what it looks like. Officer Beall further testified that appellant is 5'8" and weighs 300 pounds. Despite appellant's size, Officer Beall testified that as he stood on the driver's side of the Cutlass automobile he saw the small bag of marijuana to the right of appellant who sat in the driver's seat to this car.
 {¶ 6} Officer Beall testified that he asked appellant if the bag of weed, which is how he phrased it, was his, and appellant did not respond. Beall asked Wilks for his driver's license which Wilks produced. At this point, Beall ordered appellant out of the car as he needed, "to recover the bag of marijuana, which was right next to him." Officer Beall testified that he was planning to recover the marijuana and write a minor misdemeanor citation for its possession to appellant, and that appellant was not under arrest at that point.
 {¶ 7} Officer Beall testified that when he ordered appellant out of the car, he told him that he was going to pat him down and ordered him to put his hands on the Cutlass. Wilks was wearing baggy clothing including a long black shirt that covered his waistband Beall testified he wanted to do the pat down because he said he would feel safer reaching inside the car to retrieve the marijuana if he first checked Wilks for weapons as his attention would be briefly diverted. Beall testified that Wilks put his hands on the Cutlass for two or three seconds but, before he could begin the search, appellant turned around and told the officer he wasn't going to be patted down and began to run.
 {¶ 8} Beall and Officer Stutz caught up with Wilks and a struggle ensued. During the struggle, Wilks kept reaching into the front of his pants. In fifteen to thirty seconds, Wilks was subdued. Beall asked Wilks if he had a gun. Wilks responded, "No, I have crack in my pocket." Beall then placed Wilks in handcuffs.
 {¶ 9} Officer Beall patted down Wilks and in his left front pocket, Beall felt what he thought was a baggie with a hard substance in it. Thinking that what he felt "probably was" crack cocaine, Beall retrieved the object from Wilks' pocket. The substance was subjected to a field test, which yielded a positive result for the presence of crack cocaine. Wilks was then arrested for possession of crack cocaine and cited for failing to signal before pulling away from the curb and for possessing marijuana.
 {¶ 10} At the conclusion of the suppression hearing the trial court held that the marijuana seized from the appellant's vehicle was admissible because it was seen by Officer Beall in "plain view." The court suppressed the statement made by appellant that "I have crack in my pocket" because he was not properly "mirandized." The court refused to exclude the cocaine found in appellant's pocket because it would have been "inevitable discovered" by Officer Beall when he patted down the appellant.
 {¶ 11} In a single assignment of error, Wilks contends the trial court erred in denying his motion to suppress the drugs found on his person.
 {¶ 12} Wilks argues that Officer Beall did not have reasonable grounds to frisk him once he was out of his vehicle and represented no risk of harm to Beall. He notes that Beall testified that Wilks did not make any furtive movements, and that he testified he had no reason to believe Wilks was armed and dangerous. (Tr. 19). He also notes that he had committed at best a minor misdemeanor and thus Beall could not arrest him and search him incident to that arrest. Wilks also argues that the resultant search of him could not be justified under the "inevitable discovery" doctrine.
 {¶ 13} The State argues for its part that Officer Beall was justified in conducting a pat down search of Wilks because he had observed drugs in Wilks' car and because the officer had been dispatched on a 911 call to the house nearby where multiple drug related arrests had occurred in the past. Also the State argues that Beall never conducted the pat down until Wilks ran from Beall in response to his request and kept reaching into the front of his pants as he ran away. The State finally argues that Wilks flight from a lawful detention gave rise to probable cause to arrest him for obstructing official business.
 {¶ 14} Some appellate courts have held that a pat down search of a suspect is justified when he is suspected of possessing even small amounts of marijuana inside a vehicle. See, State v. Ryan
(July 31, 1995), Warren App. No. CA-94-08-073.
 {¶ 15} In California v. Hodari, 499 U.S. 620,111 S.Ct. 1547, 113 L.Ed.2d 690, the United States Supreme Court held that even if a police officer's pursuit of defendant on suspicion of a narcotics transaction was a "show of authority" enjoining defendant to halt, defendant was not seized until the officer physically tackled him since the defendant did not comply with that show of authority and thus, the cocaine abandoned by defendant while he was running was not the fruit of seizure and was not subject to seizure.
 {¶ 16} Likewise, in this matter while Officer Beall's request to pat down Wilks was a "show of authority" it was not a pat down until he actually conducted it. Wilks' response to Beall's request by running away and grabbing for something at his waist provided justification for a pat down of him when he was caught by the officers. We agree with the trial court's finding that these officers would have patted down Wilks for a weapon without regard to his admission that he had crack cocaine in his possession. Accordingly, the trial court's conclusion that the crack cocaine found on Wilks was admissible under the inevitable discovery doctrine was correct. The appellant's assignment of error must be overruled.
 {¶ 17} The judgment of the trial court is affirmed.
Wolff, J., and Young, J., concur.