OPINION
{¶ 1} Anthony L. Stargell was indicted for one count of fleeing and eluding a police officer, one count of possession of cocaine, one count of assault of a police officer, and one count of having weapons under disability. After his motion to suppress was overruled, he pled no contest to counts two, three, and four, while the count one of fleeing and eluding was dismissed.
 {¶ 2} On appeal, he challenges the trial court's decision to overrule his motion to suppress tangible evidence in the observations of the police officers. His counsel on appeal phrases this assignment of error as an argument for the suppression, as follows:
 {¶ 3} "Permitting the police to purposefully create an unlawful condition of surprise, fear and confusion and then to benefit from it is to defeat the purposes of the exclusionary rule. Evidence so obtained is fruit of the poisonous tree and must be suppressed."
 {¶ 4} The facts of this matter and the rationale of the decision of the trial court are set forth concisely but sufficiently in its entry, as follows:
 {¶ 5} "This case is before the Court pursuant to Defendant's motion to suppress filed January 22, 2003. An evidentiary hearing was conducted on August 8, 2003. Three (3) witnesses testified at said hearing: Officer Erick Hamby, called by the State; the Defendant himself; and Officer John Soto as a State's rebuttal witness. Defendant filed his memorandum in support of the motion on November 17, 2003, and his second memorandum in support on November 25, 2003. The State filed its memorandum on December 12, 2003.
 {¶ 6} "Defendant is charged by indictment with (1) failure to comply; (2) possession of crack cocaine; (3) felonious assault on a peace officer; and (4) having weapons under disability.
 {¶ 7} "Defendant seeks suppression of tangible evidence and observations. Suppression of statements, although referenced in Branch IV of the motion, were not an issue at the hearing. Also, Defendant has focused in his motion only on the police activity in the apartment complex parking lot and has not raised as an issue the police pursuit, Defendant's arrest, or search of his car.
 {¶ 8} "The testimony of Officer Hamby conflicts with that of Defendant on certain points. In considering the tests of credibility charged to juries, the Court finds the testimony of Officer Hamby to be credible on the conflicts. The Court finds the facts as follows:
 {¶ 9} "On December 21, 2002, around 9:00 p.m., Officer Hamby of the Dayton Police Department was on duty in the uniform of the day and in a marked cruiser. Officer Hamby received a dispatch of a drug complaint in the area of 1916-1920 James H. McGee Boulevard, which is the Western Manor apartment complex sometimes referred to as `the coast' or `west coast.' The apartment complex itself is a high-crime area with numerous drug and weapons violations. The dispatch was based on the report of an unidentified caller whose reliability could not be verified. The dispatch gave the address and reported that subjects in the parking lot were selling drugs. No information about the race or gender of the subjects was given. Three officers responded to the area in question. Officer Hamby and Officer Rodgers, in separate cars, arrived first, followed by Officer Soto. Officer Hamby saw three black males standing by a black Cadillac toward the front of the lot. Two males, upon seeing the cruisers, proceeded to an apartment and went inside. Defendant, the third male, turned and got into the Cadillac as the cruisers turned around and pulled up to it. The three cruisers were positioned in relation to Defendant's Cadillac such that, although the Cadillac was not totally blocked in, the cruisers were very close to Defendant's car. The front of Officer Hamby's cruiser was approximately 5 feet or 6 feet from the front of Defendant's car. Defendant's car was positioned such that the front of it faced the front of the three cruisers. Defendant's car was only movable by going forward.
 {¶ 10} "Suspecting that Defendant might be the subject of the dispatch, it was Officer Hamby's intention to conduct a field interview of Defendant since he was the only person still available. Defendant's car engine was running and the headlights were on. The three officers exited their separate cruisers and approached Defendant's car. Officers Hamby and Rodgers approached the driver side and Officer Soto approached the passenger side of Defendant's car.
 {¶ 11} "Officer Hamby spoke to Defendant by identifying himself and asking to speak to Defendant. Defendant pulled the gearshift to `Drive.' Officer Hamby then gave Defendant several commands: `Put it in Park,' and `Show me your hands,' which latter command was repeated three or four times. Although Officer Hamby could see Defendant's right hand on the gearshift handle, there was a safety concern regarding Defendant's left hand. Defendant then pulled the shifter into `Drive' and accelerated his car forward between Hamby's cruiser to the left of Defendant's forward motion and Soto's cruiser to the right of Defendant's forward motion. Although Defendant struck neither cruiser with his car as he sped away, he did strike Officer Soto's body with the car. Defendant drove over the curb at the street, blew a tire in the process, turned right onto James H. McGee Boulevard, and fled. Defendant's car ultimately came to rest after colliding into a parked car in the yard of a residence. Defendant was arrested, and a search of his car produced crack cocaine and a handgun.
 {¶ 12} "Officer Hamby testified on cross-examination that he saw no illegal activity involving the three subjects when he entered the complex parking lot. Officer Hamby also testified on cross-examination that he did not know how `fresh' the information in the dispatch was. Finally, Officer Hamby testified that he pulled his firearm when Defendant did not comply with the request for defendant to show both hands.
 "DECISION {¶ 13} "Defendant argues that under Terry v. Ohio (1968), 392 U.S. 1, and Florida v. Bostick (1991), 501 U.S. 429, the police had no reasonable, articulable suspicion of criminal activity and that Defendant was unconstitutionally seized by the police, whose conduct far exceeded a consensual encounter, and even amounted to an arrest of Defendant without probable cause. Consequently, Defendant argues that all evidence following the illegal detention in the parking lot must be suppressed as `fruit of the poisonous tree.'
 {¶ 14} "The State argues first, that the police had reasonable, articulable suspicion for a limited investigatory stop of Defendant and second, that even if the police lacked the requisite level of suspicion for a Terry stop, the Defendant was subject to pursuit and arrest for committing a felony in the striking of Officer Soto when Defendant fled.
 {¶ 15} "Upon duly considering the matter, based on a review of the totality of the circumstances, the Court finds that Defendant was unlawfully seized by the police in the parking lot. The police encounter far exceeded a consensual encounter but did not amount to an arrest of Defendant.
 {¶ 16} "The more important question, however, is what are the consequences of the unlawful police conduct? The Defendant argues that all evidence and observations subsequent to the unlawful encounter (the observations of Defendant fleeing, his failure to comply with police attempts to stop him, and crack cocaine and the handgun) should be suppressed as fruits of the poisonous tree.
 {¶ 17} "The Court finds Defendant's argument on this point not to be well taken. Although there was a constitutional violation regarding Defendant's seizure in the parking lot, there was no evidence discovered by the police at that time that would be subject to the exclusionary rule. When Defendant fled the parking lot and struck Officer Soto with Defendant's car, the police has [sic] probable cause to arrest Defendant for the offense of assault on an officer. Defendant's conduct created an intervening cause and an independent basis to pursue and arrest Defendant.
 {¶ 18} "The Court finds that the application of the `fruit of the poisonous tree' does not apply under the facts of this case. Accordingly, Defendant's motion to suppress is OVERRULED."
 {¶ 19} We agree with the trial court's decision, both as to its holding that the defendant was unlawfully seized by the police and its holding that the police still had probable cause to arrest the defendant with the offense of assault on an officer, as explained by the trial court. This court has already gone on record as holding that where the officers lacked cause to effectuate an original arrest yet where the accused responded to an illegal arrest by physically attacking the officer, the evidence of this new independent crime is admissible. In such cases, no expectation of the prior illegality by police is involved. State v. Jobes, Montgomery App. No. 20210, 2004-Ohio-1167;State v. Nelson (Mar. 9, 2001), Champaign App. No. 00CA12; State v.Barnes (Dec. 5, 1997), Montgomery App. No. 16434. In Barnes, we quoted from our decision in Nelson as follows: "The fruit of the poisonous tree doctrine has not been applied by courts to all fruits in a `but for' fashion. Id. The conduct of Defendant subsequent to his arrest in assaulting police officers and paramedics at the police station, which is what Defendant seeks to have suppressed, are new, independent acts of willful misconduct which involve no exploitation by police of his earlier arrest. Defendant's criminal conduct at the police station is completely separate from the offenses police were investigating when they originally arrested Defendant. The rationale behind the exclusionary rule simply does not reach that far to bar evidence of this new crime."
 {¶ 20} We further stated in Barnes that in a case of an attack on the police officers subsequent to an unlawful arrest involves no exploitation of the prior illegality and the rationale of the exclusionary rule does not justify its extension to this extreme. "Application of the exclusionary rule in such fashion," as one court put it, "would in effect give the victims of illegal searches a license to assault and murder the officers involved — a result manifestly unacceptable." Id.
 {¶ 21} The foregoing analysis was clearly recognized by the trial court and we approve and adopt its decision as our own, together with the added analysis set forth above.
 {¶ 22} The assignment of error is overruled and the judgment is affirmed.
Wolff, J. and Fain, J., concur.