[Cite as *State v. Lewis*, 2017-Ohio-1195.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27152 |
| | : | |
| v. | : | Trial Court Case No. 15-CR-3613 |
| | : | |
| DERRICK LEWIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of March, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 1886 Brock Road, N.E., Bloomingburg, Ohio 43106
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, P.J.

{¶ 1} Derrick Lewis appeals from his conviction and sentence following a no-contest plea to charges of heroin possession and aggravated drug possession.

{¶ 2} In his sole assignment of error, Lewis contends the trial court erred in overruling his motion to suppress the drugs at issue. More specifically, he asserts that a police officer was not entitled to pat him down during a traffic stop, that his subsequent arrest was invalid, and that all evidence discovered was subject to suppression.

{¶ 3} The record reflects that Dayton police officer Terry Perdue, the only witness at the suppression hearing, saw Lewis driving a Chevy Trailblazer with very darkly tinted windows. Lewis proceeded to make a lane change without signaling properly before pulling into a drug-store parking lot. Perdue turned his cruiser around and pulled into the parking lot, intending to perform a traffic stop for the turn-signal violation and an apparent window-tint violation. When Perdue approached the Trailblazer, however, Lewis was gone. A passenger in the Trailblazer, Makayla Patton, identified the driver as Derrick Lewis and explained that he was inside the drug store. Perdue ran a computer check on Patton and discovered that she had at least one unspecified warrant and a history of "field interviews" for drugs.

{¶ 4} While Perdue was dealing with Patton, Lewis exited the drug store. After Patton again identified Lewis as the driver of the Trailblazer, Perdue called him over to the cruiser. Perdue asked Lewis for identification, which Lewis did not possess. Perdue also asked whether Lewis had been driving, which Lewis denied. At that point, Perdue placed one hand on Lewis' back in an attempt to perform a pat down before placing him in the cruiser and running a computer check on him. Perdue testified that the attempted

pat down was for officer safety to make sure Lewis did not have a weapon. Perdue was concerned about possible weapons primarily because of passenger Patton's prior drug-related field interviews.

{¶ 5} In any event, Lewis fled on foot when Perdue touched his back to start the pat down. Lewis ran into the middle of the street and fell. Perdue caught him there, put handcuffs on him, and placed him under arrest for obstructing official business based on his flight from the traffic stop. During a search incident to arrest, Perdue found Percocet, Xanax, heroin, and $1,500 cash in Lewis' pants pockets. The Trailblazer was inventoried and towed, but the suppression-hearing transcript does not identify what additional evidence was found in it.

{¶ 6} Lewis ultimately was charged on four drug-related counts, and he moved to suppress all evidence discovered in connection with the traffic stop. Based on the testimony presented, the trial court overruled the motion. In relevant part, it reasoned:

> In the case at bar, Perdue credibly testified that he had observed the traffic violations. Further, he believed that a pat-down for officer safety was necessary because the passenger in the car had been linked to drug activity through the field identification cards on her. Perdue intended to place Defendant in his cruiser while he ran Defendant's identification information. Based on the foregoing the attempted pat-down of Defendant was justified. Further, after Defendant fled the scene, the search of his person incident to his arrest was justified.
>
> Finally, Defendant objects to the search of his Trailblazer because it was conducted without a warrant. Perdue testified, however, that the search

was conducted in accordance with the City of Dayton's tow policy, which provides for an inventory search of impounded vehicle[s]. Defendant was an unlicensed driver, and since he was being arrested, the Trailblazer was impounded. * * *

(Doc. #20 at 4).

{¶ 7} Lewis later pled no contest to one count of heroin possession, a fourth-degree felony, and aggravated drug possession, a fifth-degree felony. The trial court imposed five years of community control.

{¶ 8} On appeal, Lewis contends his passenger's history of drug-related field interviews did not authorize Perdue to pat him down as part of a traffic stop. Lewis asserts that his case is distinguishable from *State v. Thompson*, 2d Dist. Montgomery No. 26130, 2014-Ohio-4244, a case discussed below. Lewis claims the defendant's own actions justified a pat down in *Thompson*, whereas the trial court improperly relied on his passenger's history of field interviews here. Finally, based on his belief that the attempted pat down was unlawful, Lewis reasons that his subsequent arrest was invalid and that all evidence discovered should have been suppressed.

{¶ 9} Upon review, we find Lewis' argument to be unpersuasive. In *Thompson*, a police officer, Jeff Hieber, observed defendant Thompson speeding before turning into a parking lot without signaling. Thompson's vehicle also appeared to have excessive window tint. Thompson proceeded inside a cell-phone store, where Hieber approached him to address the traffic violations. *Id.* at ¶ 4-5. Thompson became defensive and loud when confronted, denied driving, and escalated the situation. *Id.* at ¶ 6-7. As Thompson moved around and refused to cooperate, Hieber attempted to escort him out of the store.

Thompson pulled away, and the officer decided to conduct a pat down for his safety and the safety of others in the store. Hieber feared that Thompson, who was wearing layers of clothing, might have a weapon. Thompson refused to cooperate with the pat down and was handcuffed. *Id.* at ¶ 9. Once outside the store, Hieber observed drugs protruding from Thompson's pocket. Thompson was arrested, and an inventory search of his car yielded additional drugs and other contraband. *Id.* at ¶ 10-12. In overruling Thompson's suppression motion, the trial court found, among other things, that Hieber was justified "in conducting a pat-down search for his safety and the safety of the store patrons due to Thompson: lying about driving the vehicle; escalating the encounter by being uncooperative; yelling at Hieber; and being defensive." *Id.* at ¶ 13.

**{¶ 10}** Addressing the pat down on appeal, this court reasoned:

Here, Hieber testified that he initially attempted to pat Thompson down on two occasions inside the cell phone store after Thompson's actions led him to believe that his safety and the safety of the store patrons may have been in danger. At that point in time, Thompson had: (1) lied to Hieber about driving to the store; (2) stood up and yelled excitedly at Hieber multiple times while flailing his arms; (3) was defensive and refused to calm down after Hieber merely asked to talk to him about his window tint; and (4) was uncooperative when Hieber asked him to come outside the store. Hieber also testified that it was cold outside and that Thompson had layers of clothes on in which a weapon could have been concealed. Based on the totality of these circumstances, we conclude that the initial pat down attempts in the cell phone store were justified.

The pat down, however, could not be completed in the cell phone store, because Thompson continually tried to place his hand in his right pants pocket. Accordingly, Hieber was unable to discern whether Thompson had a weapon and therefore, chose to handcuff him and escort him out the store. After they were outside the store, Thompson again reached for his right pants pocket and began pulling out a cellophane bag while Hieber was turned around. When Hieber saw the top of the bag emerging from Thompson's pocket, he told Thompson to stop and subsequently completed the pat-down search. Due to Thompson's behavior inside the store, his repeated attempts to reach his pocket, and his attempt to pull out a cellophane bag while Hieber was not looking, we find that the completed pat-down search outside the store was justified as well.

*Id.* at ¶ 27-28.

**{¶ 11}** Lewis contends his case is distinguishable from *Thompson* because he did nothing to justify a pat down when Perdue confronted him in the drug-store parking lot. We note that " '[o]nce a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others.' " *Id.* at ¶ 25, quoting *State v. Lawson*, 180 Ohio App.3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 21 (2d Dist.). It is perhaps a close question whether Perdue reasonably believed Lewis might have been armed. We need not resolve that issue, however, because the suppression motion properly was overruled even if we assume, arguendo, that Perdue was not entitled to conduct a pat down in the parking lot.

**{¶ 12}** The traffic stop itself was lawful based on Perdue's observation of apparent traffic violations. Even if Perdue impermissibly attempted a pat down as part of the stop, Lewis was not entitled to respond by fleeing on foot and forcing the officer to chase him into the street. Although an unlawful pat down may have resulted in exclusion of any evidence discovered, " 'absent bad faith on the part of a law enforcement officer, [a defendant] cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances.' " *State v. Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶ 19, quoting *State v. Stevens*, 5th Dist. Morgan No. 07-CA-0004, 2008-Ohio-6027, ¶ 37, and *State v. Pembaur*, 9 Ohio St.3d 136, 138, 459 N.E.2d 217 (1984). We see no evidence of bad faith by Perdue. Therefore, by fleeing the scene of a lawful traffic stop, Lewis subjected himself to a valid arrest for obstructing official business. *See, e.g., State v. Jackson*, 1st Dist. Hamilton No. C-990371, 2000 WL 376420 (April 14, 2000), *1-2 (holding that a vehicle occupant's flight on foot from a valid traffic stop gave police probable cause to arrest the occupant for obstructing official business in violation of R.C. 2929.31).

**{¶ 13}** Notably, the drugs at issue were not found during Perdue's attempted pat down in the parking lot. Rather, they were found when he conducted a pat down pursuant to Lewis' lawful arrest for obstructing official business. Again, if Lewis believed the attempted pat down in the parking lot constituted an impermissible extension of the traffic stop, he should have cooperated with it and then sought suppression of any evidence discovered. By electing instead to flee, Lewis subjected himself to arrest for obstructing official business, and Perdue was entitled to search him incident to that arrest. Therefore, the drugs in Lewis' possession lawfully were discovered, as were any drugs or contraband

that may have been found during an inventory search of the impounded Trailblazer. That being so, the trial court correctly overruled the suppression motion.

{¶ 14} The assignment of error is overruled, and the trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., and, TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Meagan D. Woodall
George A. Katchmer
Hon. Barbara P. Gorman