[Cite as *State v. Anderson*, 2018-Ohio-190.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27482 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-3203 |
| | : | |
| DEWAN ANDERSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of January, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 7821 N. Dixie Drive, Dayton, Ohio 45414
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Dewan Anderson appeals from his conviction and sentence following a no-contest plea to one count of cocaine possession, a fifth-degree felony.

{¶ 2} In his sole assignment of error, Anderson challenges the trial court's denial of a suppression motion he filed prior to entering his plea. Specifically, he contends the trial court erred in finding that the police officer had a reasonable, articulable suspicion of criminal activity to justify stopping and detaining him.

{¶ 3} The only witness at the suppression hearing was Dayton police officer Jordan Wortham. He testified that he was on patrol on the afternoon of October 5, 2016 when he responded to a report of a silent burglary alarm being activated at a cell-phone business located at 2001 North Main Street. He promptly responded to that address, parked his cruiser across the street facing the business, and monitored the scene. (Tr. at 7, 9). Within a matter of seconds, Wortham saw Anderson walk around the side of the business toward him. Upon seeing the marked cruiser, Anderson abruptly stopped, turned around, and walked the other direction. (*Id.* at 10). Wortham found Anderson's actions suspicious and decided to make an investigatory stop. He explained his reasoning as follows:

> As I look at the business I see the defendant, Mr. Anderson, walk to the left side which would be the south side of the business. I see him appear from directly behind it and he was walking casually until he looked up at my cruiser, and as he looked up at my cruiser he abruptly stopped. * * * [T]hen he quickly turned away facing west away and proceeded to briskly walk so he hurried his walk. He wasn't casually walking like he was when he was directly behind the business until he saw me.

> So that heightened my suspiciousness of the fact that he abruptly stopped and looked at me, turned away really fast. The business alarm was activated. He's in close proximity of the business. He's a few feet away from the business. I have to stop him to investigate further into his possible involvement of the burglar alarm being activated at the business.

(*Id.* at 10).

{¶ 4} Wortham proceeded to testify that he did not recall seeing anyone else in the area. (*Id.*). After observing Anderson make an abrupt about-face and walk out of sight, Wortham caught up to him in the cruiser. (*Id.* at 12). He approached on foot and ordered Anderson to stop. (*Id.* at 12). As he did so, he noticed a "distinct bulge" protruding from Anderson's waist band. (*Id.*). Based on his experience and the appearance of the bulge, Wortham suspected that it might be a handgun, particularly in light of the fact that he was investigating an activated alarm and a possible burglary in a noted high-crime area. (*Id.* at 12-13). As a result, he decided to conduct a weapons frisk. (*Id.* at 13). Upon doing so, he recognized the "distinct" feel of packaged marijuana and pill capsules where he saw the bulge. (*Id.*). As he conducted the pat down, he also detected a strong odor of marijuana coming from Anderson. (*Id.* at 14).

{¶ 5} On cross examination, Wortham reviewed a cruiser-cam video of the incident. Wortham acknowledged that the video actually showed three or four people other than Anderson entering or leaving the store or walking past. (*Id.* at 17-18). Wortham explained that he did not approach any of these people because they were "not suspicious." (*Id.* at 19). Unlike Anderson, who abruptly stopped, turned around, and disappeared from sight upon seeing the police cruiser, these other people appeared to

be just walking. (*Id.* at 18-20). Wortham also admitted that Anderson was not free to go upon being approached by the officer. (*Id.* at 21). Wortham testified that he patted Anderson's outer clothing and immediately knew that what he felt in Anderson's waist band was drugs. (*Id.* at 24, 33). In fact, Anderson possessed multiple plastic baggies containing marijuana and pill capsules. (*Id.* at 26).

{¶ 6} In the following exchange with defense counsel, Wortham reiterated his suspicion when he observed Anderson:

Q. Okay. You had indicated that you thought he was suspicious. What made you think this guy was suspicious? Because he walks up and turns around and walks back and—

A. No, the fact that he's walking behind the business. He sees my cop car and abruptly stops, looks at me, quickly blades his body away, turns his face away as if he's trying to get away from me, that raises my suspicion of this whole incident and that's why I wanted to make contact to investigate further into this matter to see if he's possibly involved [in] breaking into the rear of this business.

Q. Okay. And that's the suspiciousness of his behavior; is that what you're saying? That's what made—

A. The fact that he was in close proximity of the business, the alarm was activated, he's walking behind the business, he looks up, sees my cop car, abruptly stops, turns, blades his body away from my cop car, tries to walk as if he's walking trying to get away from me.

In my experience, if you're not breaking the law you're not going to

look at a cop or a police officer, stop abruptly quick and try to turn away from an officer unless you're doing something you shouldn't be doing, and that raised my suspicion that he saw me and wanted to just abruptly stop and turn away and briskly walk away from it.

* * *

Q. Okay. You had indicated "bladey." Where did he blade? At what point?

A. I used the word "blade" as if you turn your shoulders at an angle as if I'm looking at you right now, if I wanted to demonstrate to the Court, blade (turning), somewhat of a turning. I'm looking at the Court and I turn my body. I use the term "blade," blade your body.

Q. So if you're walking and you decide to turn the other way, that's blading to you?

A. In the totality of the circumstances of the activated alarm, him looking directly at me and then turning really quickly, I use the term "blade," turn really quick as if he's trying to conceal his face, turn away from me so he's not detected.

(*Id.* at 27-28).

{¶ 7} Based on the evidence presented, the trial court found that Wortham was justified in stopping and detaining Anderson to investigate the alarm. The trial court also found that Wortham's frisk of Anderson was justified by the officer's reasonable concern that the "bulge" in Anderson's waist band might be a weapon. As set forth above, that frisk resulted in Wortham feeling what he immediately recognized as drugs. Therefore,

the trial court found no basis for suppression and overruled Anderson's motion. (Doc. #18).

{¶ 8} Anderson subsequently pled no contest to one count of cocaine possession, a fifth-degree felony. The trial court accepted the plea, found him guilty, and imposed community-control sanctions.

{¶ 9} In his assignment of error, Anderson challenges only whether Wortham had reasonable, articulable suspicion of criminal activity to justify stopping and detaining him. His entire argument is as follows:

It appears both from testimony at the motion to suppress hearing and in the video, introduced as an exhibit at trial, that the trial court erroneously found that Officer Wortham had a reasonable and articulable suspicion that Anderson was involved in criminal activity. A view of the tape does not show Anderson to be "blading" or otherwise abruptly changing his path. Moreover, the testimony of the officer on cross-examination admitted that he had seen more people than just Anderson at the scene, and that he saw Anderson only very briefly before stopping him at which time he had [not] yet seen a "bulge" in Anderson's pants. In the instant case, Officer Wortham had an "articulable" suspicion that Anderson might be involved in criminal activity, but the suspicion was not "reasonable," in that he had not observed enough conduct by Anderson to reasonably believe he had been involved in criminal activity and to justify stopping and detaining him.

When the video is viewed and the testimony supra considered, it is clear that the trial court's ruling is against the manifest weight of the

evidence.

(Appellant's brief at 7).

**{¶ 10}** Upon review, we find Anderson's argument to be unpersuasive. The sole issue he raises is whether Wortham had reasonable, articulable suspicion for an investigatory detention under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist.1990), citing *Terry* at 27.

**{¶ 11}** When assessing the existence of reasonable suspicion, we evaluate the "totality of the circumstances." *State v. Shepherd*, 122 Ohio App.3d 358, 365, 701 N.E.2d 778 (2d Dist.1997), citing *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988). These circumstances must be considered " 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *2 (Jan 18, 2002), quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶ 12}** With the foregoing standards in mind, we see no error in the trial court's ruling. Wortham had more than an inchoate and unparticularized suspicion or hunch when he detained Anderson. He was responding to a report of a burglary alarm being activated at a business. Upon his arrival, his cruiser-cam video recorded three or four people in the vicinity. It also recorded Anderson as he walked around the side of the business and, upon seeing the marked cruiser, immediately stopped, turned around, and walked the other direction and out of sight. Having reviewed the video, we agree with Wortham's

assessment that Anderson's behavior was suspicious whereas the behavior of the other people at the scene was not. Based on the burglary alarm, Anderson's proximity to the business, and Anderson's suspicious behavior, which we find to be supported by the testimony and the video, we believe Wortham possessed reasonable, articulable suspicion to justify briefly detaining him to investigate further.

{¶ 13} In his reply brief, Anderson raises two additional arguments, asserting that no basis for a weapons frisk existed and that Wortham's actions exceeded a weapons frisk. These arguments also lack merit. An officer may conduct a weapons frisk during a *Terry* stop if he has reasonable grounds to believe that the suspect may be armed and pose a danger to the officer. *State v. Grefer*, 2d Dist. Montgomery No. 25501, 2014-Ohio-51, ¶ 24-26. Here Wortham was investigating a burglary alarm at a business in a high-crime area. Wortham observed Anderson acting suspiciously in close proximity to the business. As he approached Anderson, Wortham noticed a "distinct bulge" protruding from Anderson's waist band. Based on his experience and the appearance of the bulge, Wortham suspected that it might be a handgun. Under these circumstances, we believe Wortham had reasonable grounds to believe Anderson might be armed and dangerous. Therefore, a weapons frisk was permissible.

{¶ 14} Finally, we conclude that the pat-down at issue did not exceed the scope of a permissible weapons frisk. "Under the plain-feel doctrine, an officer conducting a pat down for weapons may lawfully seize an object if he has probable cause to believe that the item is contraband." *State v. Wheeler*, 2d Dist. Montgomery No. 27282, 2017-Ohio-4013, ¶ 31. Upon patting Anderson's outer clothing, Wortham immediately recognized the distinct feel of packaged marijuana and pill capsules. As a result, he was entitled to seize

the drugs.

{¶ 15} Based on the foregoing reasoning, we overrule Anderson's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Alice B. Peters
J. Allen Wilmes
Hon. Barbara P. Gorman